IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:11-CV-103-FL

| | |
|---|---|
| LARVETRA FULFORD, MACK MANN, JUSTIN McCOY, CARTER MIDGETTE, TYLAJUWON SHELTON, JARRETT SPENCER, FABIAN SPENCER, NORWOOD SPENCER, NICHOLAS SPENCER, MICHAEL WESTON, and LACY WHITAKER, <br><br> Plaintiffs, <br><br> v. <br><br> ALLIGATOR RIVER FARMS, LLC, <br><br> Defendant. | ORDER |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed August 19, 2011. Plaintiffs responded on September 23, 2011, and defendant replied October 6, 2011.

On November 15, 2011, plaintiffs filed amended complaint. By order entered January 10, 2012, the court notified the parties that it deemed defendant's motion to dismiss to adhere to plaintiffs' amended complaint. Plaintiffs were allowed additional time to respond to defendant's motion to dismiss as now directed against the amended complaint, and defendant was allowed time to reply. In compliance with the court's order, plaintiffs filed response on January 31, 2012. Defendant replied on February 13, 2012, and the issues raised are now ripe for adjudication.

For the following reasons, defendant's motion to dismiss is denied.

## STATEMENT OF THE CASE

Plaintiffs filed complaint on June 20, 2011, alleging therein claims against Alligator River Farms, LLC ("defendant"), arising under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiffs are eleven individuals who allegedly worked for defendant in March, 2010.[1]

On August 19, 2011, defendant filed motion to dismiss complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded September 23, 2011 and also moved that day to amend the complaint. The court granted the motion for leave to amend, and plaintiffs filed amended complaint on November 15, 2011. Thereafter, the court entered order indicating that defendant's motion to dismiss now attached to the amended complaint. Plaintiffs were allowed to respond to the motion to dismiss as it now attached to the amended complaint, and defendant was allowed an additional reply. Plaintiffs filed their response on January 31, 2012, and defendant replied February 13, 2012.

## STATEMENT OF FACTS

The facts, alleged by plaintiffs in the amended complaint and accepted as true for purposes of this order, are as follows.

Plaintiffs are African-American citizens of the United States and residents of Hyde County, North Carolina. Defendant is a North Carolina limited liability company with its principal place of business in Hyde County, North Carolina. Defendant grows various crops and, plaintiffs assert, is

---

[1] Specifically, plaintiffs are: Larvetra Fulford, Mack Mann, Justin McCoy, Carter Midgette, Tylajuwon Shelton, Jarrett Spencer, Fabian Spencer, Norwood Spencer, Nicholas Spencer, Michael Weston, and Lacy Whitaker.

an "agricultural employer" as defined by 29 U.S.C. § 1802(2).

On or about February 1, 2010, defendant applied to the United States Department of Labor ("USDOL") for permission to hire fifty-eight H-2A workers to do field work cultivating and harvesting defendant's crops.[2] Employment was to begin March 25, 2010 and conclude December 15, 2010. In 2009, defendant had followed the same process to hire fifty-six H-2A workers from Mexico to do similar work on its farm.

Defendant, as part of its application with the USDOL, submitted a clearance order in which it detailed the nature of the work offered. The clearance order stated, *inter alia*, that workers would be paid by the hour for planting broccoli. It did not disclose a production standard for broccoli planting, aside from requiring that workers "keep up with their fellow workers."

Plaintiffs learned of the jobs available on defendant's farm in early spring, 2010. Some were alerted by an advertisement in a local newspaper, others by word of mouth. Each plaintiff applied for a job with defendant and was hired. Some plaintiffs went to defendant's office and were interviewed and told to report to work on March 25, 2010. Others called and were similarly instructed to report.

Plaintiffs reported for work on March 25 and were assigned to plant broccoli. No information regarding the job or plaintiffs' rights as seasonal agricultural workers was posted at the worksite, nor did plaintiffs see a poster detailing their rights while they were employed by defendant. Further, plaintiffs did not receive a copy of the clearance order, and the order was not posted at the

---

[2] "Agricultural employers who anticipate a labor shortage for temporary or seasonal jobs may petition the government for permission to employ foreign workers on a temporary basis pursuant to the H-2A visa program. 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Before the Immigration and Naturalization Service will approve an application, the employers must certify that there is a domestic labor shortage and that employing foreign workers will not adversely affect the wages and working conditions of similarly situated American workers. Id. § 1188(a)(1)." Reyes-Gaona v. North Carolina Growers Ass'n, 250 F.3d 861, 863 n. 1 (4th Cir. 2001).

worksite.

Plaintiffs were not given any hand tools. Rather, defendant instructed plaintiffs to create with their hands the hole in which to plant each broccoli plant. The H-2A workers from Mexico, in contrast, were given hand tools. Further, while these H-2A workers were allowed to work in teams and to speak with each other, plaintiffs were not. Defendant also required plaintiffs to re-do their work, while the Mexican H-2A workers were not required to re-do work of similar quality. In addition, the Mexican crew started the work day several hours later than plaintiffs.

Defendant made it clear that plaintiffs needed to work more and more quickly and gave them the impression that they would be paid on a piece rate, by the broccoli flat, rather than by the hour as stated in the clearance order. Defendant imposed a shifting production standard that plaintiffs were unable to meet, and defendant's president, Wilson Daughtry, berated plaintiffs and told them that they would not "make it."

On Sunday, March 28, plaintiff Tylajuwon Shelton went to church in the morning and did not report to work until the afternoon. Defendant discharged Shelton for reporting late. Defendant discharged plaintiff Lacy Whitaker on or about March 27, 2010, and Larvetra Fulford on or about March 31, 2010, for allegedly failing to meet defendant's production standard. Plaintiffs Fabian Spencer, Norwood Spencer, Michael Weston, Carter Midgette, and Jarrett Spencer quit on or about March 27 because defendant made the work intolerable, and because they feared they would be discharged.[3] Finally, plaintiffs Justin McCoy, Mack Mann, and Nicholas Spencer quit on or about March 31, 2010, due to continued humiliation and threats of termination.

---

[3] Plaintiffs include Tylajuwon Shelton in that group of plaintiffs who quit on or about March 27, 2010. However, in paragraph 44 of the amended complaint, plaintiffs also allege that Shelton was fired on March 28, 2010, for reporting to work late.

4

# DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, and Twombly, 550 U.S. at 557).

B. Plaintiffs' AWPA Claims

Plaintiffs' first claim for relief arises under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq. This Act has the express purpose "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers . . . and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. Plaintiffs allege, and

5

defendant does not appear to challenge, that at all times relevant plaintiffs were "seasonal agricultural workers," and defendant was an "agricultural employer," as defined in 29 U.S.C. § 1802. Plaintiffs assert that defendant violated three provisions of the AWPA, namely 29 U.S.C. §§ 1831(b), 1831(e), and 1832(c). The court analyzes these particular claims below.

1.  Alleged violation of 29 U.S.C. § 1831(b)

Plaintiffs first allege that defendant violated 29 U.S.C. § 1831(b), which imposes the following posting requirements upon employers of seasonal agricultural workers:

> Each farm labor contractor, agricultural employer, and agricultural association which employs any seasonal agricultural worker shall, at the place of employment, post in a conspicuous place a poster provided by the Secretary [of Labor] setting forth the rights and protections afforded such workers under this chapter, including the right of a seasonal agricultural worker to have, upon request, a written statement provided by the farm labor contractor, agricultural employer, or agricultural association, of the information described in subsection (a) of this section. Such employer shall provide, upon request, a written statement of the information described in subsection (a) of this section.

29 U.S.C. § 1831(b). The regulations reiterate that this poster must be posted "at the place of employment *in a conspicuous place readily accessible* to the worker." 29 C.F.R. § 500.76(d)(1) (emphasis added).

Plaintiffs allege that "[n]o information regarding the job or [p]laintiffs' rights as seasonal agricultural workers was posted at the worksite. While they were employed by [d]efendant, none of the [p]laintiffs saw a poster about their rights as seasonal agricultural workers." Am. Compl. ¶ 29. The latter sentence is sufficient to state a claim for relief. The regulation requires placement of the poster in a "conspicuous place readily accessible to the worker." 29 C.F.R. § 500.76(d)(1). Certainly the poster could not have been in a conspicuous place if no plaintiff saw it. Accordingly, defendant's motion to dismiss as to this claim is DENIED.

2. Alleged Violation of 29 U.S.C. § 1831(e)

Plaintiffs next claim that defendant knowingly provided false and misleading information to plaintiffs regarding the terms and conditions of employment, in violation of 29 U.S.C. § 1831(e) and 29 C.F.R. § 500.77.[4]

First, plaintiffs argue that the terms of their employment were misleading because while the clearance order only required employees to "keep up with fellow workers," plaintiffs were actually required to meet a specific production standard for planting broccoli. Once plaintiffs began working, defendant allegedly "imposed a production standard of planting a certain number of flats within a given pay period." Am. Compl. ¶ 35. And defendant allegedly discharged certain plaintiffs for failing to meet defendant's production standard. Am. Compl. ¶ 46.

If, as alleged, defendant held plaintiffs to a specific production standard, requiring them to plant a certain number of flats within a given period, and discharged them for not meeting this standard, rather than for not keeping up with fellow workers, then the statement in the clearance order that plaintiffs were merely required to "keep up with fellow workers" would be misleading.

Second, plaintiffs maintain that the facts alleged in the amended complaint show that defendant provided false or misleading information concerning the terms and conditions of plaintiffs' compensation. The clearance order provides for an hourly wage of $7.27 for planting and cultivating broccoli. Once plaintiffs began working, however, defendant allegedly "left plaintiffs with the impression that they were going to be paid on a piece rate, by the flat, for the plants they

---

[4] Section 1831(e) provides: "No farm labor contractor, agricultural employer, or agricultural association shall knowingly provide false or misleading information to any seasonal agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), or (c) of this section." 29 U.S.C. § 1831(e). Similarly, 29 C.F.R. § 500.77 states: "No farm labor contractor, agricultural employer or agricultural association shall knowingly provide false or misleading information on the terms, conditions or existence of agricultural employment and housing required to be disclosed by the Act and these regulations to any migrant or seasonal agricultural worker."

7

planted." Am. Compl. ¶ 35. This factual allegation, construed in the light most favorable to plaintiffs, sufficiently alleges that defendant knowingly misled plaintiffs to believe that they would be paid on a piece rate, either in addition to or replacement of the hourly wage stated in the clearance order. Accordingly, plaintiffs have alleged facts sufficient to state a claim for violation of 29 U.S.C. § 1831(e), and defendant's motion to dismiss as to this claim is DENIED.

3.  Alleged Violation of 29 U.S.C. § 1832(c)

Finally, plaintiffs claim that defendant violated 29 U.S.C. § 1832(c), which provides:

> No farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any seasonal agricultural worker.

29 U.S.C. § 1832(c).

Plaintiffs maintain that defendant violated the terms of the working arrangement between the parties by giving the H-2A workers preferential treatment. Specifically, plaintiffs allege that defendant allowed the H-2A workers to use tools, work in teams and speak to each other, while concurrently prohibiting plaintiffs from doing the same. Plaintiffs argue that section 1832(c) incorporates, as terms of the working arrangement between plaintiffs and defendant, the substantive requirements of the H-2A Program, including the regulations passed, pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq., that prohibit preferential treatment of H-2A workers.[5]

The issue before the court, then, is whether the "working arrangement," as comprehended

---

[5] The H-2A regulations in effect at the time plaintiffs were hired provided in relevant part: "The employer's job offer must offer to U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers. Job offers may not impose on U.S. workers any restrictions or obligations that will not be imposed on the employer's H-2A workers." 20 C.F.R. § 655.122(a).

8

by 29 U.S.C. § 1832(c), incorporates the protections guaranteed plaintiffs by the H-2A regulations. Fourth Circuit precedent supports plaintiffs' argument. In Donaldson v. United States Dept. of Labor, 930 F.2d 339 (4th Cir. 1991), the Fourth Circuit allowed the plaintiff farm workers to incorporate into 29 U.S.C. § 1832(c) the substantive obligations imposed upon agricultural employers by relevant provisions of the Wagner-Peysner Act, 29 U.S.C. §§ 49, et seq., the INA, and their implementing regulations. Donaldson, 930 F.3d at 350. Similarly here, plaintiffs seek to incorporate into the working arrangement the substantive obligations imposed on defendant by 20 C.F.R. § 655.122, which regulation was issued under the INA. Accordingly, pursuant to Fourth Circuit precedent, the court finds that defendant was obligated, under the "working arrangement" as contemplated by 29 U.S.C. § 1832(c), to comply with regulations issued pursuant to the INA, including, *inter alia*, the prohibition against preferential treatment of H-2A workers. See 20 C.F.R. § 655.122(a). And where plaintiffs have alleged that defendant gave preferential treatment to the H-2A workers, specifically by allowing them to work in teams, to converse, and to use tools, while simultaneously forbidding plaintiffs from doing the same, defendant's motion to dismiss as to this part is DENIED.

C.  Plaintiffs' Title VII Claims

Plaintiffs also bring employment discrimination claims against defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.[6] Specifically, plaintiffs complain that defendant subjected them to discrimination on the basis of their national origin, the United States, in the form of disparate treatment and a hostile work environment.

Title VII provides in relevant part that it is "an unlawful employment practice for an

---

[6] Only ten of the eleven plaintiffs assert a Title VII claim. Plaintiff Fabian Spencer does not.

employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1).

1.  Disparate Treatment

A plaintiff pursuing a Title VII claim may either offer direct evidence of discrimination or use the burden-shifting framework that was adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiffs seek to use the latter approach. Therefore, in order to plead a case of disparate treatment sufficient to withstand a Rule 12(b)(6) motion, plaintiffs must show: (1) that they are members of a protected class; (2) whose job performance was satisfactory; (3) that they were subjected to adverse employment action; and (4) that similarly situated employees outside their class received more favorable treatment. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Of course, "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 286 (4th Cir. 2004).

Defendant does not dispute that plaintiffs satisfy the first requirement of the McDonnell test (plaintiffs share the same nation of origin: the United States). Defendant first argues, however, that plaintiffs fail to meet the second requirement. Rather than allege "satisfactory job performance," defendant contends, plaintiffs in their amended complaint acknowledge that they were held to the same production standards as the Mexican H-2A workers and were unable to keep pace. Plaintiffs respond that any deficiency in their performance when compared to the Mexican H-2A workers was due to defendant's disparate treatment of plaintiffs. The Mexican workers were allegedly allowed

10

to work in teams, speak to each other, start the work day later, and use tools, while plaintiffs were not. The court agrees that it would be inequitable to find that plaintiffs have failed to meet the second McDonnell element if, as alleged, defendant prevented them from performing satisfactorily.

Next, the parties dispute whether plaintiffs were subjected to adverse employment action. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Plaintiff Shelton was allegedly fired for failing to report to work until the afternoon on Sunday, March 28, 2010, because he had gone to church in the morning. Plaintiffs Larvetra Fulford and Lacy Whitaker were allegedly discharged because they failed to meet defendant's production standard. There can be no dispute that these discharged plaintiffs suffered adverse employment action.

The seven remaining plaintiffs who assert Title VII claims quit, allegedly in order to avoid the humiliation and damage to their reputation of being discharged. Plaintiffs contend that these individuals suffered adverse employment action in the form of constructive discharge. An employee asserting constructive discharge must "allege and prove two elements: (1) the deliberateness of [the employer's] actions, motivated by [national origin] bias, and (2) the objective intolerability of the working conditions." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186-87 (4th Cir. 2004). "To prove deliberateness, the plaintiff must prove 'that the actions complained of were intended by

11

the employer as an effort to force the employee to quit.'" Whitten v. Fred's, Inc., 601 F.3d 231, 248 (4th Cir. 2010) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995)).

As discussed below in the court's analysis of plaintiffs' hostile work environment claim, the amended complaint contains factual matter sufficient to support a finding that defendant made working conditions objectively intolerable. As stated repeatedly above and below, plaintiffs were allegedly prohibited from talking to each other, using tools, and working together. The Mexican H-2A workers were allowed each of these liberties, and were further allowed to start work later in the day. This difference in treatment would conceivably have the effect of making the H-2A workers more productive than plaintiffs, and where some plaintiffs were allegedly discharged for failure to meet productivity standards, such differential treatment would be objectively intolerable. Further, the alleged differential treatment raises an inference of defendant's deliberateness. Thus, the court finds that the seven plaintiffs who quit have alleged facts sufficient to support a finding of constructive charge.

Accordingly, where three of the ten plaintiffs bringing disparate treatment claims were fired, and the remaining seven have alleged facts to support a finding of constructive discharge, the court finds that plaintiffs have sufficiently alleged adverse employment action.

Finally, to proceed on a disparate treatment theory under Title VII, plaintiffs must allege that similarly situated employees outside their class received more favorable treatment. Defendant first argues that plaintiffs and the Mexican H-2A workers were *not* similarly situated: the latter were experienced workers, the former not. Yet the amended complaint gives no certain indication that the Mexican H-2A workers were more experienced than plaintiffs. While it does state that defendant hired fifty-six H-2A workers in the previous year, 2009, it does not allege that the fifty-eight H-2A

workers hired in 2010 were the same individuals. Further, plaintiffs allege that they and the Mexican H-2A workers were doing the same job, planting broccoli, and were working in the same field. Plaintiffs have therefore alleged facts supporting that they and the Mexican H-2A workers were similarly situated.

Finally, plaintiffs have sufficiently alleged that they received less favorable treatment than the Mexican H-2A workers. As discussed in greater detail below, defendant allegedly made work more difficult for plaintiffs by prohibiting them from using tools, speaking to each other, working in groups, and missing work on Sunday morning to attend church. Further, defendant allegedly required plaintiffs to start work earlier than the Mexican H-2A workers. Accordingly, plaintiffs have alleged facts sufficient to satisfy the fourth requirement, namely that similarly situated employees outside their protected class received more favorable treatment.

For the reasons stated above, the court finds that plaintiffs have alleged facts sufficient to support a claim of disparate treatment in violation of Title VII, and defendant's motion as to this part is DENIED.

2. Hostile Work Environment

Plaintiffs next allege that defendant created a hostile work environment, in violation of Title VII. To demonstrate a national origin-based hostile work environment claim, plaintiffs must show that they were the subject of conduct that was: (1) unwelcome, (2) based on national origin, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to their employer. Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009).

The parties first dispute whether plaintiffs have alleged facts supporting the second

requirement, namely that the asserted misconduct was based on plaintiffs' national origin. To satisfy this requirement, plaintiffs may offer either direct evidence of discrimination or evidence that they were treated differently than similarly situated employees outside of their protected class. Lauture v. Saint Agnes Hosp., 429 Fed. App'x 300, 307 (4th Cir. 2011) (citing Gilliam v. South Carolina Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007)). See also Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).

Defendant contends that plaintiffs have not stated facts suggesting that any of defendant's allegedly harassing behavior was based on plaintiffs' national origin – plaintiffs have not alleged any slurs or insults related to their national origin. Defendant further emphasizes that plaintiffs worked in the same field as the Mexican H-2A workers, under the same conditions, and on the same days.

Plaintiffs *have* alleged, however, that they were treated differently than the H-2A workers from Mexico. Unlike the Mexican crew, plaintiffs were allegedly forced to work without tools, to re-do work, to work individually rather than in teams, and to refrain from speaking to each other. Further, while the Mexican H-2A workers were allowed to attend church on Sunday morning, plaintiff Shelton was fired explicitly for reporting late to work after attending church. Accordingly, because of the alleged differential treatment, the court finds that plaintiffs have alleged facts sufficient to show that the alleged conduct was based on their national origin.

Next, the third requirement requires plaintiffs to have alleged conduct "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Pueschel, 577 F.3d at 565. To establish this third element, plaintiffs must show that the work environment was both subjectively and objectively hostile, "such that a reasonable person in [plaintiffs'] position would have found the environment objectively hostile or abusive." EEOC v. Sunbelt Rentals, Inc.,

14

521 F.3d 306, 315 (4th Cir. 2008). In determining whether plaintiffs have alleged conduct that is sufficiently severe, the court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id.

Defendant does not appear to dispute that plaintiffs found the work environment hostile, where the majority allegedly quit within a few days because the work was intolerable. But defendant argues that a reasonable person in plaintiffs' position would not have found the environment objectively hostile or abusive: plaintiffs were merely required to re-do work badly done. If plaintiffs were compared negatively to the Mexican workers, defendants maintain, it was merely because the latter were more experienced. Further, defendant emphasizes that plaintiffs have not alleged any physical assault or abusive language. Finally, defendant argues that the relatively short time of plaintiffs' employment – less than a week – precludes a finding of pervasive hostile conduct.

However, considering the totality of the circumstances, the court finds that plaintiffs have alleged conduct sufficiently severe or pervasive to alter the conditions of their employment and create an abusive atmosphere. While the amended complaint does not reference any physically threatening conduct, or any particularly offensive utterances, the conduct alleged would interfere with an employee's work performance. Defendant allegedly made work more difficult for plaintiffs than for the Mexican H-2A workers. Plaintiffs, unlike the H-2A workers, were prohibited from using tools, speaking to each other, working in groups, and missing work on Sunday morning to attend church. Further, plaintiffs were required to start work earlier than the Mexican workers. These facts alleged describe a workplace in which work was made substantially more difficult for

15

one group of employees than another, and where one group was precluded various liberties made available to another. The court cannot conclude at this stage that a reasonable person would not find such a work environment hostile.

Where this is no apparent dispute regarding the fourth requirement, the court finds that plaintiffs have stated a claim for relief, pursuant to Title VII, under a hostile work environment theory. Defendant's motion as to this part is therefore DENIED.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

SO ORDERED, this the 14th day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge