IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE NO. 4:11-CV-00103

| | |
|---|---|
| LARVETRA FULFORD, MACK MANN, JUSTIN MCCOY, CARTER MIDGETTE, TYLAJUWON SHELTON, JARRETT SPENCER, FABIAN SPENCER, NORWOOD SPENCER, NICHOLAS SPENCER, MICHAEL WESTON, AND LACY WHITAKER,<br><br>　　　　Plaintiffs,<br><br>v.<br><br><br>WILSON AND DEBBIE DAUGHTRY, D.B.A. ALLIGATOR RIVER GROWERS<br><br>　　　　Defendants. | SECOND AMENDED COMPLAINT |

**PRELIMINARY STATEMENT**

1. This is an action for damages, declaratory, and injunctive relief brought by eleven seasonal farm workers from Hyde County, North Carolina, based on violations of their rights under the Migrant and Seasonal Workers Protection Act and Title VII of the Civil Rights Act.

2. Plaintiffs seek to redress the wrongs they suffered when they were employed by Defendants Wilson and Debbie Daughtry, d.b.a. Alligator River Growers ("Alligator River") to

1

perform agricultural work at Defendant's farm in Engelhard, North Carolina. Defendant was required by law to recruit and hire workers such as the Plaintiffs as a condition for accomplishing their ultimate goal: to obtain certification from the Department of Labor to bring a crew of Mexican H-2A workers to work on their farm during the 2010 agricultural season. Upon hire, Plaintiffs found a hostile work environment, discriminatory job conditions and constant comparison of their performance to the preferred crew of Mexican workers, and violations of their rights under the basic federal law that protects migrant and seasonal farm workers.

3. Plaintiffs seek money damages and declaratory and injunctive relief to redress these violations of law.

## JURISDICTION AND VENUE

4. This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (commerce), and 28 U.S.C. § 1343 (civil rights).

5. The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 1854(a) (Migrant and Seasonal Agricultural Worker Protection Act) and 42 U.S.C. § 2000e(f)(3) (Title VII of the Civil Rights Act of 1964, as amended).

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), 29 U.S.C. § 1854(a).

## CONDITIONS PRECEDENT

8. Plaintiffs Larvetra Fulford, Mack Mann, Justin McCoy, Carter Midgette, Tylajuwon Shelton, Jarrett Spencer, Norwood Spencer, Nicholas Spencer, Michael Weston, and Lacy Whitaker submitted charges of discrimination to the EEOC within 180 days of the

discrimination against them. The EEOC issued a letter of determination on March 22, 2011. Thus, all conditions precedent to bringing this action have been performed or occurred.

## PARTIES

9. Plaintiffs are African-American citizens of the United States, who are, or at all times pertinent to this action were, residents of Hyde County, North Carolina. At all times pertinent to this action, Plaintiffs were seasonal farmworkers within the meaning of 29 U.S.C. §1802(10).

10. Defendants Wilson and Debbie Daughtry operate Alligator River Growers, a farm in Hyde County, North Carolina where they grow onions and other crops. At all times relevant to this action, Alligator River was an agricultural employer within the meaning of 29 U.S.C. § 1802(2) and continuously employed at least 15 employees.

## STATUTORY AND REGULATORY FRAMEWORK

11. Under the H-2A Program, created by 8 U.S.C §1888, an agricultural employer may request temporary foreign agricultural workers, or H-2A workers, if the U.S. Department of Labor (USDOL) certifies that two conditions are met: there are not enough U.S. workers ready and available to perform the jobs the employer wishes to fill with H-2A workers, and the hiring of the H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. §§1101(a)(15)(H)(ii)(a) and §1188(a)(1). At all times pertinent to this action, the H-2A Program was implemented pursuant to regulations published in 73 Fed. Reg. 77207 (Dec. 18, 2008) and codified at 20 C.F.R. §§ 655.9-655.119 (2009).

12. Before filing an application with USDOL, employers desiring to employ H-2A workers must engage in specified steps for positive recruitment of U.S. workers, including, among other activities, submitting a job order to the local State Workforce Agency, running two

print advertisements, and engaging in recruitment in all states of "traditional or expected labor supply" for the area of intended employment. § 655.102(d).

13. The recruitment period lasts until 30 days after the first date the employer requires the services of the H-2A workers. § 655.102(f)(3). During this period, the job opportunity must remain open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship. § 655.105(a). Any U.S. worker who applies for a job during this period may only be rejected for lawful, job-related reasons. *Id.* The employer must retain records of all rejections of U.S. workers. *Id.*

14. The job order is commonly known as the clearance order. The terms and conditions of the clearance order constitute an employment contract between the employer and the H-2A workers and any U.S. workers who fill H-2A positions. § 655.104(q).

15. The clearance order must include terms such as job qualifications, minimum benefits, wages, and working conditions. The employer must offer to U.S. workers no less than the same benefits and working conditions that he will offer to H-2A workers, and may not impose on U.S. workers any restrictions or obligations that will not be imposed on H-2A workers. § 655.104.

16. The clearance order must specify any minimum productivity standard that is a condition of job retention, if the employer pays by a piece rate, and the productivity standard must be normal; i.e. not unusual for workers performing the same activity in the area of intended employment, under 20 C.F.R. § 655.104(l)(2)(iii).

17. While the employer can request that workers work on federal holidays and the Sabbath, they cannot be required to do so. § 655.104(i)(3).

4

18. The employer must provide all workers, without charge or deposit charge, all tools, supplies, and equipment required to perform the duties assigned. § 655.104(f).

19. The H-2A employer must pay H-2A and U.S. workers the higher of the "adverse effect wage rate" ("AEWR"), the prevailing hourly wage or piece rate, or the federal or state minimum wage for each hour of work performed. § 655.108(a). In 2010, the federal minimum wage was $7.25 per hour and the AEWR for Hyde County, North Carolina was $7.27.

## FACTS

20. On or about February 1, 2010, Defendant applied to USDOL for permission to hire fifty-eight (58) H-2A workers to do field work cultivating and harvesting its crops, starting March 25, 2010 and ending December 15, 2010. USDOL accepted Defendant's application. A copy of the 2010 Alligator River Clearance Order ("2010 Order" or "the Clearance Order") submitted as part of this application is attached as Exhibit 1.

21. The job description included with Defendant's clearance order did not disclose a production standard for broccoli planting. The clearance order stated that employees were required to keep up with their fellow workers.

22. In 2009, upon information and belief, Defendant had, following the same process, hired fifty-six (56) H-2A workers from Mexico to do similar work on its farm.

23. In 2010, upon information and belief, Defendant intended to rehire many of the same Mexican H-2A workers.

Plaintiffs Seek Employment

24. In early spring of 2010, Plaintiffs learned of available jobs working on Defendant's farm doing field work. Some Plaintiffs were alerted by an advertisement in a local newspaper and others heard about the jobs by word of mouth.

5

25. Each Plaintiff applied for a job with Defendant and was accepted and hired.

26. Some Plaintiffs went to Defendant's office and were interviewed and told to report to work on Thursday, March 25, while others called Defendant's office and were told to report on March 25.

Plaintiffs Start Work

27. On March 25, Plaintiffs reported to work, as instructed, at a field at Defendant's operation and were assigned by Defendant to plant broccoli.

28. Most Plaintiffs never received a copy of the clearance order, nor was a copy posted at the worksite.

29. No information regarding the job or Plaintiffs' rights as seasonal agricultural workers was posted at the worksite. While they were employed by Defendant, none of the Plaintiffs saw a poster about their rights as seasonal agricultural workers.

30. Plaintiffs were not given any hand tools. Defendant's supervisors instructed Plaintiffs to create the hole in which to plant each broccoli plant with their hands and exhorted them to quickly plant flats of small broccoli plants.

31. On information and belief, the workers from Mexico were provided with hand tools that made their work easier and allowed them to work more efficiently.

32. Defendant corrected any Plaintiff when it felt he was not correctly planting the broccoli and made him re-do his work.

33. On information and belief, Defendant did not correct the workers from Mexico in the same way or require them to re-do their work although the quality of their work was not materially different from that of the Plaintiffs.

6

34. Defendant allowed the workers from Mexico work in teams, but did not allow the Plaintiffs to work in teams. Being allowed to work in teams also enabled the Mexican workers to work faster than the Plaintiffs.

35. Although the Clearance Order, paragraph 16, indicates that planting broccoli was to be paid by the hour, from the start Defendant made it clear to Plaintiffs that they needed to work more and more quickly and left Plaintiffs with the impression that they were going to be paid on a piece rate, by the flat, for the plants they planted. Defendant imposed a production standard of planting a certain number of flats within a given period upon the Plaintiffs. The number of flats necessary to meet the standard changed daily.

36. On information and belief, Defendant deliberately made it more difficult for Plaintiffs to meet Defendant's production standards than it was for the Mexican workers by, for example, not providing them with tools, forcing them to re-do their work unnecessarily, and not allowing them to work in teams.

37. Plaintiffs worked on one side of the field together with a few U.S. workers from Puerto Rico. The Mexican crew worked on the other side of the field, within sight of the Plaintiffs' crew, but they were generally unable to communicate with each other.

38. Plaintiffs generally kept up with each other planting broccoli.

39. Upon information and belief, Defendant gradually lowered the production standard until all members of the Mexican crew could meet the standard they had imposed, while all Plaintiffs failed to meet it.

40. On information and belief, Plaintiffs were meeting the Defendant's legitimate business expectations. Those expectations that Plaintiffs could not meet were not legitimate, and

were established solely as a pretext so as to artificially justify the termination of their employment.

41. Throughout the days that Plaintiffs worked for defendants, they were subjected to treatment that was different from the Mexican crew in numerous ways  For example, they were admonished to work without talking to each other, even as they could hear the Mexican crew bantering.

42. Plaintiffs started the work day several hours earlier than the Mexican crew.  The pace at which the two crews were working was compared when Plaintiffs were already tired from several hours of work.

43. Defendant's President, Wilson Daughtry berated Plaintiffs, telling them that they were not performing well enough and that they would not "make it," meaning that Plaintiffs were not going to be able to keep their job.  Defendant would point out the Mexican crew across the field and tell them they would never be able to keep up with them.  On information and belief, Defendant did not criticize or berate the Mexican workers in like fashion.

44. On Sunday, March 28, three days after he began working for Defendant, Plaintiff Shelton did not report to work until the afternoon because he went to church in the morning. Defendant discharged him for reporting to work late.

45. On information and belief, Defendant permits workers from Mexico to go to church on Sunday morning if they want to without discipline.

46. Defendant discharged Plaintiff Lacy Whitaker on or about March 27, 2010, and Larvetra Fulford on or about March 31, 2010, allegedly because they did not meet the Defendant's production standard.

47. Plaintiffs Fabian Spencer, Norwood Spencer, Michael Weston, Tylajuwon Shelton, Carter Midgette and Jarrett Spencer quit on or about March 27 because Defendant was making the work intolerable, and in order to avoid the humiliation and damage to their reputation of being discharged because it was obvious that Defendant was going to fire them.

48. Plaintiffs Justin McCoy, Mack Mann, and Nicholas Spencer stayed for several additional days, but quit on or about March 31 as the intolerable humiliation and threats of being discharged continued.

## FIRST CLAIM FOR RELIEF: MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

49. This claim arises under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.* against the Defendant.

50. Defendant intentionally violated the rights of the Plaintiffs under the AWPA in that they:

   a. failed to post in a conspicuous place at the place of employment a poster of the U.S. Department of Labor Wage and Hour Division which sets forth the protections afforded to seasonal workers under the Act, as required by 29 U.S.C. § 1831(b).

   b. knowingly provided false and misleading information to the Plaintiffs regarding the terms and conditions of employment in violation of 29 U.S.C. § 1831(e) and 29 C.F.R. § 500.77;

   c. violated without justification the terms of the working arrangement with the Plaintiffs in violation of 29 U.S.C. §1832(c) and 29 C.F.R. § 500.72.

51. As a result, Plaintiffs suffered injuries.

52. For each such violation of the AWPA, the Plaintiffs are entitled to recover their actual damages or up to $500 per violation in statutory damages.

## SECOND CLAIM FOR RELIEF: TITLE VII

*Brought by Plaintiffs Larvetra Fulford, Mack Mann, Justin McCoy, Carter Midgette, Tylajuwon Shelton, Jarrett Spencer, Norwood Spencer, Nicholas Spencer, Michael Weston, and Lacy Whitaker*

53. This claim arises under 42 U.S.C. § 2000e-2(a) of Title VII of the Civil Rights Act, as amended ("Title VII").

54. Defendant subjected Plaintiffs to discrimination in the form of disparate treatment, a hostile work environment and discharge, either actual or constructive, on the basis of their national origin

55. The effect of the conduct complained of was to deprive the Plaintiffs of equal employment opportunities and otherwise adversely affected their status as employees because of their national origin. This unlawful conduct resulted in physical and emotional pain and suffering and embarrassment to the Plaintiffs.

56. These unlawful employment practices were intentional.

57. These unlawful employment practices were done with malice or with reckless indifference to the federally protected rights of the Plaintiffs.

58. As a result, Plaintiffs suffered damages.

## JURY DEMAND

59. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a. Declare that Defendant Alligator River Growers violated Plaintiffs' rights under the AWPA;

b. Award Plaintiffs their actual damages, or statutory damages of $500, whichever is greater, per person for each of Defendant's violations of the AWPA;

c. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging employment practices which discriminate on the basis of national origin.

d. Award Plaintiffs all monetary relief necessary to eradicate the effects of its unlawful employment practices.

e. Award Plaintiffs compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, and inconvenience, in amounts to be determined at trial.

f. Award Plaintiffs punitive damages for Defendant's malicious and reckless conduct, in amounts to be determined at trial.

g. Award Plaintiffs their reasonable expenses and costs of court;

h. Award Plaintiffs prejudgment and post-judgment interest as allowed by law;

i. Award Plaintiffs such other relief as this Court deems just and proper in the public interest.

Respectfully Submitted on this 15th day of June, 2012.

| | |
|---|---|
| Legal Aid of North Carolina<br>Farmworker Unit<br>P.O. Box 26626<br>Raleigh, NC 27611<br>Telephone (919) 856-2180<br>Fax (919) 856-2187 | /s/ Caroline C. Smiley<br>Caroline C. Smiley<br>Attorney for Plaintiffs<br>CarolineS2@legalaidnc.org<br>NC State Bar No. 40077<br><br>/s/ Mary Lee Hall<br>Mary Lee Hall<br>Attorney for Plaintiffs<br>MaryLeeH@legalaidnc.org<br>NC State Bar No. 16347 |
| North Carolina Justice Center<br>P.O. Box 28068<br>Raleigh, NC 27611<br>Telephone (919) 861-0606<br>Fax (919) 856-2175 | /s/ Clermont L. Fraser<br>Clermont L. Fraser<br>Attorney for Plaintiff Lacy Whitaker<br>clermont@ncjustice.org<br>NC State Bar No. 36761<br><br>/s/ Carol L. Brooke<br>Carol L. Brooke<br>carol@ncjustice.org<br>Attorney for Plaintiff Lacy Whitaker<br>NC State Bar No. 29126 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Larry Stine
Elizabeth K. Dorminey
Wimberly, Lawson, Steckel, Schneider & Stine, P.C.
Counsel for Alligator River Growers

M. Lee Daniels, Jr.
Wimberly Lawson Daniels & Fisher, LLC
Counsel for Alligator River Growers

Respectfully Submitted on this 15th day of June, 2012.

/s/ Caroline C. Smiley
Caroline C. Smiley
Attorney for Plaintiffs
Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, NC 27611
CarolineS2@legalaidnc.org
Telephone (919) 856-2180
Fax (919) 856-2187
NC State Bar No. 40077