IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-103-FL


LARVETRA FULFORD, MACK MANN,          )
JUSTIN MCCOY, CARTER MIDGETTE,        )
TYLAJUWON SHELTON, JARRETT SPENCER,   )
FABIAN SPENCER, NORWOOD SPENCER,      )
NICHOLAS SPENCER, MICHAEL WESTON,     )
and LACY WHITAKER,                    )
                                      )          O R D E R
                 Plaintiffs,          )
                                      )
          v.                          )
                                      )
WILSON AND DEBBIE DAUGHTRY, d/b/a      )
ALLIGATOR RIVER GROWERS,              )
                                      )
                 Defendant.           )

This matter is before the court on Plaintiffs' Motion to Compel Discovery ("Pls.' Mot.").

[DE-43]. Defendant has responded. Def.'s Resp. in Opp. to Pls.' Mot. to Compel Discovery

("Def.'s Resp.") [DE-51]. Accordingly, the matter is ripe for adjudication. For the following

reasons, Plaintiffs' motion to compel is denied in part and allowed in part.

## I. BACKGROUND

On June 15, 2012, Plaintiffs filed a second amended complaint against Defendant Wilson

and Debbie Daughtry d/b/a Alligator River Growers.[1] Second Am. Compl. [DE-50]. The

complaint is an action for damages, and declaratory and injunctive relief brought by eleven

seasonal farmworkers based on alleged violations of the Migrant and Seasonal Agricultural

---

[1]     Plaintiffs' Second Amended Complaint substituted the current defendant for Alligator River
Farms, LLC, the defendant named in the complaint at the time Plaintiffs filed the motion to compel.
No other modifications pertinent to the pending motion have been made to the complaint.

Workers Protection Act, 29 U.S.C. § 1801 *et seq.* ("AWPA") and Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-2(a). *Id.* ¶¶ 1, 5. According to the complaint, Plaintiffs are

eleven African-American citizens who are seasonal farm workers and who were hired by

Defendant to perform agricultural work at Defendants' farm located in Engelhard, North

Carolina. *Id.* ¶¶ 2, 9. Alligator River Growers is a sole proprietorship engaged in agricultural

operations concerning primarily the planting and harvesting of broccoli, snapbeans, onions and

grain crops in North Carolina. Decl. of Wilson Daughtry ("Daughtry Decl.") [DE-51-1] ¶ 3; *see*

Second Am. Compl. ¶ 10.[2]

Alligator River Growers utilizes the H-2A visa program to hire foreign workers from

Mexico to work during the agricultural season, which generally runs from March through

December. Daughtry Decl. ¶¶ 3-4; *see* Second Am. Compl. ¶ 11. For the 2010 agricultural

season, Defendant's H-2A contract was set to commence on March 25, 2010 and end on

December 15, 2010. Daughtry Decl. ¶ 6. Plaintiffs allege that Defendant was permitted by the

United States Department of Labor ("USDOL") to hire 58 H-2A workers to cultivate and harvest

crops starting March 25, 2010 and ending December 15, 2010. Second Am. Compl. ¶ 20.[3]

---

[2]     Alligator River Farms, LLC is a small family-owned business. Daughtry Decl. ¶ 2. Alligator River Farms owns farmland and investments in other business ventures. *Id.* at ¶ 3. Alligator River Farms does no farming nor does it have any employees; rather, the farming operation is operated through Alligator River Growers. *Id.* Wilson Daughtry primarily runs the farm operations along with his wife, Debbie Daughtry. *Id.* at ¶ 2. Alligator River Farms does not employ full-time office staff to maintain various business records and files. *Id.* Debbie Daughtry is primarily responsible for maintaining the company's records and has been responsible for organizing and producing the various records requested by Plaintiffs in this litigation. *Id.*

[3]     Plaintiffs allege that Defendant followed the same process in 2009, hiring 56 workers from Mexico to perform similar work on its farm, and that Defendant intended to hire many of the same Mexican H-2A workers in 2010. Second Am. Compl. ¶¶ 22-23.

Defendant hired Plaintiffs and, on March 25, 2010, Plaintiffs reported for work as instructed at a field where Plaintiffs were assigned to plant broccoli. Second Am. Compl. ¶¶ 25, 27. According to Plaintiffs, Defendant did not provide Plaintiffs with hand tools, but provided hand tools to workers from Mexico, thereby making their work easier and allowing them to work more efficiently. *Id.* ¶¶ 30-31. Defendant corrected Plaintiffs when it felt they were not correctly planting the broccoli and made Plaintiffs repeat their work. *Id.* ¶ 32. Defendant did not correct the workers from Mexico in the same manner or require them to repeat their work, although the quality of their work was not materially different from Plaintiffs. *Id.* ¶ 33. Defendant allowed the workers from Mexico to work in teams, but did not permit Plaintiffs to work in teams, thereby allowing the Mexicans to work faster than Plaintiffs. *Id.* ¶ 34. Defendant made it clear to Plaintiffs that Plaintiffs needed to work more quickly and implied that Plaintiffs were going to be paid according to a production standard of planting a certain number of pieces within a given period of time. *Id.* ¶ 35. Plaintiffs allege that Defendant deliberately made it more difficult for Plaintiffs to meet Defendant's production standard than it was for the workers from Mexico by not providing Plaintiffs with hand tools, forcing Plaintiffs to repeat their work unnecessarily and by not allowing Plaintiffs to work in teams. *Id.* ¶ 36.

During their employment, Defendant treated Plaintiffs differently than the workers from Mexico. *Id.* ¶ 41. For example, Plaintiffs were admonished to work without talking to each other, "even as they could hear the Mexican crew bantering." *Id.* Plaintiffs started the work day several hours earlier than the workers from Mexico, and Defendant compared the pace at which the two crews were working after Plaintiffs were tired from already having worked several hours.

3

*See id.* ¶ 42. Defendant's President, Wilson Daughtry, told Plaintiffs they were not performing well enough and that Plaintiffs would not "'make it,' meaning that Plaintiffs were not going to be able to keep their job." *Id.* ¶ 43. Defendant would point out the workers from Mexico and tell Plaintiffs that Plaintiffs "would never be able to keep up with them." *Id.* Plaintiffs allege that Defendant did not criticize the workers from Mexico in a similar fashion. *Id.*

Defendant had planned to bring its H-2A workers from Mexico to the farm around the second week in April 2010 based on Defendant's belief that due to conditions on the farm, the season would actually commence a few weeks after the date indicated on the contract. Daughtry Decl. ¶ 6. However, Defendant unexpectedly received a shipment of broccoli that required immediate planting. *Id.* ¶ 7. Because Defendant's foreign H-2A workers had not yet arrived, Defendant brought in all of the domestic workers hired under the H-2A contract, including Plaintiffs, to begin work on or about March 25, 2010. *Id.* However, there were not enough domestic workers hired under the H-2A contract to complete this initial work. *Id.* at ¶ 8. Thus, Defendant hired a farm labor contractor to bring in his crew of workers to assist in the work. *Id.* Defendant had used such crews in the past, usually to perform various tasks on the farm as needed. *Id.* The farm labor contractor performed work on Defendant's farm for a period of a "couple of weeks," from March to April, 2010. *Id.* ¶ 9. According to Defendant, none of Defendant's personnel managed or supervised the crew of workers brought to the farm by the farm labor contractor and the crew leader of the farm labor contractor supervised his own employees. *Id.*

On Sunday, March 28, three days after beginning employment at Alligator River Growers, Plaintiff Shelton did not report for work until the afternoon because he had attended

4

church. Second Am. Compl. ¶ 44. Defendant discharged Shelton for reporting late to work although, according to Plaintiffs, Defendant permits workers from Mexico to go to church on Sunday without discipline. *Id.* ¶¶ 44-45.[4] Defendant discharged Plaintiff Lacy Whitaker on or about March 27, 2010, and Larvetra Fulford on or about March 31, 2010, allegedly because each failed to meet Defendant's production standard. *Id.* ¶ 46. On or about March 27, 2010, Plaintiffs Fabian Spencer, Norwood Spencer, Michael Weston, Carter Midgette and Jarrett Spencer quit because Defendant was making work conditions intolerable and in order to avoid being discharged, which Plaintiffs allege was inevitable. *Id.* ¶ 47. On or about March 31, 2010, Plaintiffs Justin McCoy, Mack Mann and Nicholas Spencer quit because of Defendant's intolerable humiliation and threats of being discharged. *Id.* ¶ 48.

Plaintiffs' claim that Defendant violated their rights under the AWPA by (1) failing to post in a conspicuous place a USDOL Wage & Hour Division poster setting forth the protections afforded to seasonal workers under the AWPA, (2) providing false and misleading information to Plaintiffs regarding the terms and conditions of their employment, and (3) violating the terms and conditions of Plaintiffs' working arrangement. *Id.* ¶¶ 49-51. All Plaintiffs except Fabian Spencer allege Defendant subjected Plaintiffs to unlawful discrimination in the form of disparate treatment, hostile work environment and either actual or constructive discharge on the basis of Plaintiffs' national origin. *Id.* ¶ 54.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure enable parties to obtain information by serving

---

[4] The complaint alleges also that Plaintiff Shelton quit his employment on or about March 27, 2010 because Defendant was making work intolerable and in order to avoid humiliation and damage to his reputation from certain termination. Second Am. Compl. ¶ 47.

5

requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26–37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98–CV–62–BO, 2000 WL 33672978, at *4 (E.D.N.C. Sept. 27, 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party.'" *Equal Employment Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. Jun. 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D.Tex. 2005)); *see Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc., v. Sanders*, 437 U.S. 340, 351 ((1978)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

It is well-settled that the party resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. *Mainstreet Collection*, 270 F.R.D. at 241.

6

While the district court has "wide latitude in controlling discovery," including the overall scope of discovery, "[u]ndue restrictions of discovery in Title VII cases are 'especially frowned upon.'" *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682, 684 (4th Cir. 1986) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983)); *Rodger v. Elec. Data Sys. Corp.*, 155 F.R.D. 537, 539 (E.D.N.C. 1994). "[A] district court may not, through discovery restrictions, prevent a plaintiff from pursuing a theory or entire cause of action." *Ardrey*, 795 F.2d at 682 (citations omitted); *Rodger*, 155 F.R.D. at 539 (holding that Rule 26 is not to be interpreted so as "to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.") (quoting Fed. R. Civ. P. 26 Advisory Committee Note)).

## III. DISCUSSION

On February 20, 2012, Plaintiffs served their First Request for Production of Documents and First Set of Interrogatories on Defendants. Mem. of Law in Supp. of Pls.' Mot. to Compel Discovery ("Pls.' Mem.") [DE-44 at 2]; [DE-43-3, -4]. Defendant served its responses to discovery on March 20, 2012. [DE-43-5, -6]. Between April 23 and May 10, counsel for the parties communicated among each other attempting to resolve outstanding discovery requests. Pls.' Mem. at 3; [DE-43-7 through -12]; *see* Def.'s Resp. at 6-7. The court has held an informal telephone conference with the parties regarding the discovery dispute, after which Defendant served supplemental responses to Plaintiffs' discovery requests, but maintained its objections to Plaintiffs' requests which are the subject of the instant motion. Pls.' Mem. at 3. The disputed discovery Plaintiffs have moved to compel pertain to Plaintiffs' interrogatories Nos. 1-3 and Request for Production Nos. 1, 2 and 6. Pls.' Mem. at 5-11; Def.'s Resp. at 7.

1.    Interrogatory No. 1.

In Interrogatory No. 1 Plaintiffs ask Defendant to

identify by name, national origin, business and home addresses, and telephone
number any farm labor contractors utilized by you from 2008 through 2010 and
identify the dates you utilized each, and the tasks performed by his or her crew.

[DE-43-3 at 2]. Defendant objects to this interrogatory on the grounds that it is overly broad,

oppressive and is not reasonably calculated to lead to the discovery of admissible evidence.

Def.'s Resp. at 11.

Plaintiffs state that the requested information is needed because in order to support their

claim of national origin discrimination, Plaintiffs require an understanding of Defendant's

complete workforce over several years and varying patterns of labor needs over the course of the

agricultural season. Pls.' Mem. at 5-6. Plaintiffs' claims of discrimination however relate to

specific allegations that Defendant treated them differently than one particular crew of workers

purportedly from Mexico over the course of one week in March 2010. Plaintiffs have made no

claims regarding any farm labor contractor who may have been employed by Defendant prior to

or after their employment in 2010. The discovery of farm labor contractors other than the one

brought to the farm during Plaintiffs' employment is not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiffs are entitled to the requested material insofar as it

relates to farm labor contractors utilized by Defendant during Plaintiffs' period of employment,

which Defendant states it has provided to Plaintiffs by way of supplementation. Def.'s Resp. at

11. Plaintiffs' motion as to this interrogatory is otherwise denied.

8

2. Interrogatory No. 2.

In Interrogatory No. 2, Plaintiffs ask Defendant to

list the names, national origins, home addresses, telephone numbers, dates of hire, dates of employment, job title and tasks performed of all non-H-2A workers either employed by you or who sought employment with you in 2008, 2009, and 2010. If the non-H-2A worker sought employment with you but was not employed by you, please indicate the job she or he sought, the date for which she or he was applying. If a worker performed multiple tasks, please indicate the period in which he or she performed each task.

[DE-43-3 at 2-3]. Defendant objects to this interrogatory on the grounds that it is overly broad, oppressive and is not reasonably calculated to lead to the discovery of admissible evidence. Def.'s Resp. at 14-15. In particular, Defendant objects to producing information regarding job applicants who were not hired by Defendant under the H-2A contract and did not perform the same work as Plaintiffs. Defendant objects further to producing information corresponding to time periods beyond Plaintiffs' employment. Def.'s Resp. at 14.

Plaintiffs have made no allegations regarding Defendants hiring practices and to the extent Plaintiffs seek information regarding job applicants who sought employment from Defendant, but who were not hired, the request is not reasonably calculated to lead to the discovery of admissible evidence. Similarly, Plaintiffs' request for information regarding job applicants beyond the time of Plaintiffs' employment and corresponding to positions unrelated to Plaintiffs' is not reasonably calculated to lead to the discovery of admissible evidence. Information regarding Defendant's non-H2A field workers employed during the 2010 growing season is reasonably calculated to lead to the discovery of admissible evidence. In particular, the interrogatory may identify other field workers whose testimony of Defendant's treatment of non-H-2A field workers may corroborate Plaintiffs' allegations of Defendant's treatment and alleged

9

discriminatory motive. Plaintiffs have agreed to limit this request to field workers. Pls.' Mem. at

7. Defendant has not demonstrated that production of this information poses an undue burden.

In fact, Defendant indicates it has provided a list of workers employed in 2009 and 2010. Def.'s

Resp. at 14. Defendant shall respond to the interrogatory as modified herein to the extent

responsive information has not been provided.

3.      Interrogatory No. 3.

In Interrogatory No. 3, Plaintiffs ask Defendant to

list the names, national origins, home addresses, dates of hire, periods of
employment and tasks performed of all H-2A workers employed by you in 2008,
2009, 2010, and 2011. If a worker performed multiple tasks, please indicate the
period in which he or she performed each task.

[DE-43-3 at 3]. Defendant has objected to this interrogatory on the grounds that it is overly

broad, oppressive and is not reasonably calculated to lead to the discovery of admissible

evidence. Def.'s Resp. at 16. In particular, Defendant objects to providing responsive

information beyond Plaintiff's period of employment. *Id.*

Either at summary judgment or at trial in order to demonstrate a prima facie case of

disparate treatment or pretext, Plaintiffs may need to establish that they were treated differently

than other similarly-situated employees. *Lauture v. St. Agnes Hosp.*, 429 Fed. Appx. 330, 2011

WL 1881969, at *5 (4th Cir. May 18, 2011) (citing *Gilliam v. South Carolina Dep't of Juvenile

Justice*, 474 F.3d 134, 142 (4th Cir. 2007)); *see Allen v. Pacific Coast Feather Co.*, No. 5:10-

CV-484-FL, 2012 WL 1441428, at *3 (E.D.N.C. Apr. 26, 2012). In determining whether two

employees are similarly situated the court looks at all relevant factors. *See Allen*, 2012 WL

1441428, at *3; *see also Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (to show

that a plaintiff is similar to a comparitor, a plaintiff must provide evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). The standard for discoverability is much broader than that of the admissibility of evidence. *See Allen*, 2012 WL 1441428, at *4. In a disparate treatment case, discovery should be "reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Rodger*, 155 F.R.D. at 540 (quoting *Hardrick v. Legal Srvcs. Corp.*, 96 F.R.D. 617, 618-19 (D. D.C. 1983)).

Determining the proper scope of this request requires the identification at this point in the litigation of who may be a comparable employee to Plaintiffs'. Plaintiffs have alleged that Defendant discriminated against them on the basis of their national origin and subjected them to a hostile work environment. Plaintiffs have also alleged Defendant provided false and misleading information regarding the terms and conditions of their employment. Plaintiffs compare themselves to a group of field workers purportedly from Mexico who worked at Defendant's farm temporarily but who, according to Defendant, were supervised by a crew leader rather than Defendant. *See* Daughtry Decl. ¶ 9. Plaintiffs allege Defendant treated them and the Mexican field workers differently. Plaintiffs allege specific actions by Daughtry admonishing Plaintiffs to keep up with the crew of Mexican field workers or risk losing their jobs. In particular, Plaintiffs have alleged that one Plaintiff was terminated for reporting late for work after having attended Sunday church services, while Defendant permits Mexican workers to attend such services without discipline.

11

At this point, the record does not rule out Defendant's decision-making ability with respect to all field workers, irrespective of the particular crew working at the farm, nor that Defendant may have treated other non-foreign field workers differently to an actionable degree than foreign field workers. Limiting the scope of the request to H-2A field workers who worked on Defendant's farm in 2010 is reasonably calculated to lead to the discovery of admissible evidence. Moreover, defining this as the proper scope of the discovery request is reasonably related to the circumstances involved in the alleged discrimination, to a time frame involving the alleged discriminatory conduct and the individuals involved in the alleged conduct. *See Rodger*, 155 F.R.D. at 540. Defendants shall therefore produce responsive information corresponding to the 2010 growing season. Defendant has not demonstrated that the production of this information would pose an undue burden. In fact, Defendant indicates it has produced a complete list of all workers employed under the same contract including Mexican H-2A workers during the same time period as Plaintiffs' employment and 2009-2010. Def.'s Resp. at 16. Defendant shall therefore produce responsive information to the request as modified herein to the extent the information has not yet been produced.

4.      Request for Production No. 1.

    In Request for Production No. 1, Plaintiffs ask Defendant to produce:

    All correspondence, written statements, notes of conversations, memoranda,
    database files or other documents that in any way relate to the application, hiring,
    recruitment, employment, discipline, termination or separation from employment
    and/or decision not to rehire Plaintiffs, or which refer to Plaintiffs or any other
    workers or farm labor contractors who performed work for you between March 25
    and December 15, 2010.

[DE-43-4 at 5]. Defendant objects to this request on the grounds that it is overly broad. Def.'s

Resp. at 17. Defendant indicates however that it has produced Plaintiffs' personnel files, work contract, and employment policies, job orders, and advertisements and payroll records and employee lists for the 2010 growing season. *Id.* at 13. The information requested corresponding to farm labor contractors is not reasonably calculated to lead to the discovery of admissible evidence as Plaintiffs have alleged no claims regarding farm labor contractors. For the same reason, requested information regarding the non-hire of job applicants is overly broad because Plaintiffs have not asserted claims regarding Defendant's failure to hire. Limiting the request to records showing termination and/or separation from employment of field workers and reasons for termination and/or separation from employment of field workers employed by Defendant from March 2010 through December 2010, however, is reasonably calculated to lead to the discovery of admissible evidence. In particular, the request as modified may lead to the discovery of alleged discriminatory motive by Defendant and evidence of Defendant's treatment of other field workers is relevant.

5.  Request for Production No. 2.

In Request for Production No. 2, Plaintiffs ask Defendant to produce:

[a]ll field tally records, supporting summary payroll records and records for 2010 showing:
a. the nature and amount of the work performed by your workers and farm labor contractors and their crews each day;
b. the number of hours of work offered by you each day; the hours actually worked each day and each week by your workers and farm labor contractors and their crews;
c. the time your workers and farm labor contractors and their [crews] began and ended each workday;
d. the rate of pay (both piece rate and hourly) for your workers and farm labor contractors;
e. the workers' and farm labor contractors' earnings per pay period; and
f. the number of units each produced per day by each worker or worker of a farm

labor contractor used by you whether the workers were paid on a per unit basis or not.

[DE-43-4 at 6]. Defendant objects to this request on the grounds that the request seeks production of extensive payroll records for the entire 2010 season where Plaintiffs' employment lasted only a single week and such information is not relevant to Plaintiffs' claims. Def.'s Resp. at 18. Defendant responds further that the payroll records for the crews of farm labor contractors during the 2010 season are not relevant in comparison to Defendant's payroll records for its own employees because the farm labor contractor crews were managed by their own crew leaders and were subject to different terms and conditions set forth under the H-2A contract. *Id.* at 19; *see* Daughtry Decl. ¶ 9. Therefore, according to Defendant, how the crews were paid and managed has no bearing on Plaintiffs' employment with Defendant.

Plaintiffs argue that the requested data is necessary to support Plaintiffs' argument that Defendant's proffered reasons for Plaintiffs' termination is pretext. Pls.' Mem. at 10. To establish a prima facie case of disparate treatment, Plaintiffs must show as part of their prima facie case that similarly situated employees outside their class received more favorable treatment. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 250 (1981); *see Cook v. CSX Trans. Co.*, 988 F.2d 507, 511 (4th Cir. 1993). If Plaintiffs establish a prima facie case of disparate treatment, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse action. *Burdine*, 450 U.S. at 254. If Defendant meets its burden, Plaintiffs must then show by a preponderance of the evidence that Defendant's proffered reason is pretext for illegal discrimination, and that the adverse employment action was motivated instead by discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

14

Here, Plaintiffs allege they were pressured to meet production standards and some Plaintiffs were terminated because they failed to.meet those standards. Pls.' Mem. at 10. Plaintiffs contend they were paid according to production and not by the hour as stated in the clearance order. Second Am. Compl. ¶ 35. Plaintiffs allege further that Defendant made it more difficult for Plaintiffs to meet the production standard and that Defendant told Plaintiffs that they were not performing well enough and may lose their jobs. Id. ¶¶ 36, 43. Plaintiffs argue that evidence of production tests or the lack thereof is relevant to Plaintiffs' claim that the tests were pretext intended to weed out certain workers. Pls.' Mem. at 10.

Documents relevant to Plaintiffs' claims include those documents that will show the amount of hours worked, rate of pay, number of pieces planted, and amount of pay per field worker during Plaintiffs' period of employment, including the crew of Mexican field workers of the farm labor contractor working on Defendant's farm in March and April 2010. It appears to the court that this information will show how field worker pay was determined and in particular, whether pay was determined on a production basis or by an hourly rate and the rate at which various workers may have been performing their jobs. This information is probative of Plaintiffs' rebuttal to Defendant's articulated legitimate non-discriminatory reason for adverse employment action. It does not appear that the production of these documents poses an undue burden on Defendant. In fact, Defendant indicates it has produced responsive information from March and April 2010, as well as payroll records, daily tally sheets, notes and attendance records for all employees during the 2010 season. Def.'s Resp. at 4, 18. It is not clear however from Defendant's response whether the documents Defendant has produced contain this information or whether the documents in fact exist. Nonetheless, to the extent this information is within

15

Defendant's possession and Defendant has not yet produced the material, it is ordered to do so.

6.      Request for Production No. 6.

In Request for Production No. 6, Plaintiffs ask Defendant to produce:

[a]ll employment records and personnel files that you made or kept concerning Plaintiffs and other workers or prospective workers on your farm from 2008 to the present, including but not limited to: applications from prospective workers, referrals of prospective workers from the North Carolina Employment Security Commission or other entities, reports to the North Carolina Employment Security Commission or the U.S. Department of Labor regarding applicants for your jobs, records relating to discipline, termination or separation, and I-9 forms. For each record please indicate, the job title of the worker and his or her dates of employment.

[DE-43-4 at 7]. Defendant objects to this request to the extent it seeks information about other workers and prospective workers from 2008 to the present. Def.'s Resp. at 20.

In support of the request, Plaintiffs point out that prior acts of discrimination are relevant to establish motive and intent and that information about Defendant's discipline and termination of other workers over time is necessary to establish a pattern of disparate treatment. Pls.' Mem. at 10-11. Indeed, in the context of disparate treatment employment discrimination, information regarding prior discrimination suits against a defendant is relevant to evaluate the defendant's employment practices as a whole and provide evidence regarding intent. *See Rodger*, 155 F.R.D. at 541. Plaintiffs' request however does not specify prior acts of discrimination and instead seeks information well beyond that which may be related to Plaintiffs' claims or which is reasonably calculated to lead to the discovery of admissible evidence. Nonetheless, to the extent Plaintiffs seek information regarding prior acts of discrimination by Defendant, Plaintiffs' motion is allowed and Defendant shall produce all complaints filed by any field worker with any government agency from 2008 to the present containing allegations of national origin

16

discrimination, hostile work environment or violations of the AWPA. Defendant has not demonstrated that production of such material would pose an undue burden. In fact, Defendant indicates it has produced responsive information as it relates to Plaintiffs. Def.'s Resp. at 20.

## IV. CONCLUSION

For the reasons set forth above, the court orders that Plaintiffs' Motion to Compel Discovery [DE-43] is denied in part and allowed in part.

SO ORDERED, this the 24th day of August, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

17